Mary Louise Guste, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 9582. Promulgated June 26, 1947.

*William J. Guste, Esq.*, for the petitioner.
*D. Louis Bergeron, Esq.*, for the respondent.

OPINION.

DISNEY, *Judge*: The issue here is concerned primarily with income from three sources: Income from the operation of "Antoine's" Restaurant; income from rentals on properties located at Pleasant Street and Fairmont Drive; and income from annuities. The only question presented is whether the paraphernal property of petitioner was "administered" by her husband. Pertinent provisions of the Louisiana Civil Code are as follows:

Art. 2383. Definition.—All property which is not declared to be brought in marriage by the wife, or to be given her in consideration of the marriage or to belong to her at the time of the marriage, is paraphernal.

Art. 2384. Wife's right to administer.—The wife has the right to administer personally her paraphernal property, without the assistance of her husband.

Art. 2385. Wife failing to administer paraphernal property—Management by husband.—The paraphernal property, which is not administered by the wife separately and alone, is considered to be under the management of the husband.

Art. 2386. Fruits of paraphernal property—Ownership.—When the paraphernal property is administered by the husband, or by him and the wife indifferently, the fruits of this property, whether natural, civil, or the result of labor, belong to the conjugal partnership, if there exists a community of gains. If there do not, each party enjoys, as he chooses, that which comes to his hands; but the fruits and revenues, which are existing at the dissolution of the marriage, belong to the owner of the things which produce them. [As amended, Acts 1871, No. 87.]

Art. 2387. Wife—Assumption of administration of paraphernal property.—The wife who has left to her husband the administration of her paraphernal property, may afterwards withdraw it from him.

\*　\*　\*　\*　\*　\*　\*

Art. 2402. Property forming community \* \* \*. This partnership or community consists of the profits of all the effects of which the husband has the administration and enjoyment, either of right or in fact, of the produce of the reciprocal industry and labor of both husband and wife, and of the estate which they may acquire during the marriage, either by donations made jointly to them

both, or by purchase, or in any other similar way, even although the purchase be only in the name of one of the two and not of both   *   *   *

Petitioner's interest in the restaurant and the two above mentioned properties was inherited by her from her father and thereby became her paraphernal or separate property. The evidence is clear that the complete operation of the restaurant is in the hands of petitioner's brother, Roy L. Alciatore, under a lease executed by the joint owners. Under the lease the profits of "Antoine's" Restaurant are placed in a special account, designated as "Roy L. Alciatore, Agent." The record of income from the properties located at Pleasant Street and Fairmont Drive was kept in separate records under the name of "Jules C. Alciatore, et al." There was some indication in the evidence that the supervision of this property, and also a plantation, was "handled" by petitioner's husband, but there was no evidence as to what management or administration was necessary. The same bookkeeper kept these records who kept the accounts for "Antoine's" Restaurant. The account known as "Jules C. Alciatore, et al." was periodically closed out in the "Roy L. Alciatore, Agent" account. Petitioner claims, on brief, that her husband had complete control over this account, stressing the fact that the checks to disburse any funds therefrom were drawn in his office. We can not agree. The only way that money could be dispersed from the "Roy L. Alciatore, Agent" account was by Roy L. Alciatore's signature on the check. We place much more significance on the fact of the necessity of a signature on a check than of the mechanics of drawing it. Merely keeping the checkbook and drawing checks for proceeds from property managed by the brother, fails to indicate management by the husband.

It is true that petitioner's husband rendered some services for "Antoine's" Restaurant for which he received compensation, but it can not be said that these services were rendered as part of the administration or management of petitioner's paraphernal property, because her brother, Roy L. Alciatore, had complete control over the management of the restaurant through the lease. There is no evidence as to what part petitioner's husband had in the signing of the lease. According to the instrument, it was executed by petitioner. She also signed her income tax return for 1941, which was prepared by a certified public accountant.

There is no showing by the evidence that any administration or management is necessary in connection with the annuities here in question. Considering the testimony of Roy L. Alciatore, we can not conclude that the investigation of the companies in order to select the annuities and the questioning of the representatives of the companies and the papers and the contracts with such companies on the part of petitioner's husband were sufficient to constitute administration or

management of this part of petitioner's paraphernal property.    This testimony indicates that what was done on the investigation was done for all of the heirs having an interest in the "Roy L. Alciatore, Agent" account, and not for petitioner alone.    Other evidence indicates that, when the time of petitioner's husband was taken in matters concerning the three heirs, he received compensation for such services, "because it does require some of his time."

The record does not disclose how the "Roy L. Alciatore, Agent" account is handled.    The only evidence before us as to any disbursements from the account was the purchase of certain annuity contracts which were issued to each of the three children (of the decedent).

Petitioner, on direct examination, testified as follows:

Q Do you require any consent on your part for any action taken by your husband in respect to the handling of your estate?

A No, I trust him implicitly and I never know what is going on and I am perfectly happy.

Q Do you require any report to you as to what is being done?

A None whatever.

Q Do you place any restriction on the handling and control of your interest by your husband?

A Certainly not.

Such statements as these are too general to be considered as proof of actual administration or management on the part of the husband. Lack of requirement of reports is nothing, unless there is management of the nature required by the statute, to report.    The statements smack of conclusion rather than of fact, and we must form a conclusion from all of the facts at hand.    The mere disclaimer of interest in management of such property is not sufficient to show the management on the part of the husband.    *Rosemary Herold Lazard* v. *Commissioner*, 153 Fed. (2d) 348, affirming 5 T. C. 277.

The *Lazard* case was decided under the Louisiana law which we are here considering, and it makes the following comment as to what is required of the husband to show that he is administering the separate property of his wife:

What is meant by leaving the administration of the wife's property to the husband is the exercise of a voluntary election by which the wife abandons her own rights of authority and control and suffers the husband to manage, not as her agent and subject to her authority, but as if the property were his own. *Miller* v. *Handy*, 33 La. Ann. 160, 164; *Risher* v. *Risher*, 179 La. 1; *Guss* v. *Mathews*, 179 La. 1033.

In the *Lazard* case the wife endorsed checks received as proceeds from the paraphernal property and turned them over to her husband for deposit in his bank account and used for family purposes, yet we find no administration by the husband.    We pointed out, citing *Guss* v. *Mathews*, 179 La. 1033, that collection of rents by a husband from

paraphernal property is no indication of management by him. The proof here in our view is no stronger. Moreover, in the *Lazard* case we pointed out that any presumption of the husband's management from lack of actual administration by the wife separately and alone, in the language of section 2385, Louisiana Civil Code, is met by the presumption of correctness of the Commissioner's determination. The petitioner relies on such presumption, citing *Bank of Coushatta* v. *Coats*, 170 La. 163; 127 So. 587, but we think such presumption can not control here. The question is here one not of presumption, but of fact, as to whether the husband administered the paraphernal property. In the recent case of *Clay* v. *United States*, 161 Fed. (2d) 607, from Louisiana, the court points out that the wife may administer, though her husband assists under her authority, and particularly that certain corporations producing paraphernal income were in the hands of their officers, not of the husband. Here, obviously, the restaurant, the principal source of income, was not under the administration of the husband. We think no proper showing has been made that the husband acted as administrator and manager of his wife's estate.

It was held in the following cases that the husband was not shown to have administered the paraphernal property either separately and alone, or indifferently with the wife. *Bank of Coushatta* v. *Coats*, *supra; Guss* v. *Mathews*, *supra; Trorlicht* v. *Collector of Revenue*, 25 So. (2d) 547; *Lucas* v. *Commissioner*, 134 Fed. (2d) 319.

*Commissioner* v. *Hyman*, 135 Fed. (2d) 49, affirming 46 B. T. A. 992, relied on by the petitioner, in our opinion contains important facts not here present. The husband borrowed money, often acting without her knowledge. He paid all bills, using the paraphernal income if necessary. He had "entire charge of all business affairs relating to such property." Though it is true that there is some similarity in the two cases, such as accountant's lack of contact with the wife, nevertheless, we consider that fact of lesser importance and not sufficient to govern. Under the *Trorlicht* and *Lucas* cases, *supra*, even turning property over to a husband, and the fact that the wife did not attempt to manage her own property, are not sufficient to demonstrate administration by the husband. The income from the paraphernal property is not shown to have been expended for the community—such as family living expense. A part, at least, was expended for the petitioner's separate interest, in the purchase of an annuity for her.

The petitioner urges inconsistency on the part of the Commissioner in his treatment of income from the paraphernal property in other years and his abandonment of a previous view, as to 1941, that there was a partnership arrangement. This would not control. Error is

not to be perpetuated. Considering the activities of petitioner's husband in the light of the cases above examined, we conclude that there has not been sufficient showing that he administered petitioner's paraphernal property.

*Decision will be entered for the respondent.*