MORTIMER A. KLINE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

GORDON OIL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 57291, 57292. Filed March 13, 1958.

*Sidney R. Reed, Esq.*, and *J. W. Bullion, Esq.*, for the petitioners.
*Mark Towsend, Esq.*, for the respondent.

OPINION.

RAUM, *Judge:* If the transaction before us were simply the sale of tangible property for $250,000, then certainly the seller would have sustained a deductible loss measured by the excess of its adjusted basis ($332,518.70) over the sales price. But the difficulty with petitioners' position is that the record fails to support their assumption that the tangible property was sold for $250,000, and there is no convincing evidence that the consideration passing to the seller in respect of the tangible property was less than its adjusted basis.

The cash payment of $250,000 was part of an integrated transaction involving an assignment of the working interests in two producing oil and gas leases along with all related assets except cash and accounts receivable. The assignment of the working interests, however, was made subject to a reserved production payment in the amount of $3,600,000 out of 85 per cent of the oil, gas, or other minerals produced. The reservation also included an amount equal to interest at the annual rate of 5 per cent upon the unliquidated balance and, in addition, all production and ad valorem taxes paid by the assignor. The assignees covenanted to develop and operate the oil and gas properties in a good and workmanlike manner and to produce oil and gas so long as they could be produced in paying quantities, except to the extent that the assignees should abandon or release any

specific portions of the properties by reassignment to the assignor. The instrument of assignment contained comprehensive provisions, including certain visitorial privileges and rights of inspection, calculated to enable the assignor to assure itself of the assignees' compliance with their various covenants. These covenants were plainly of considerable value to the assignor.

Nowhere in the instrument of assignment is there any language indicating either explicitly or by implication that the $250,000 cash payment was the sole consideration for the tangible property. A reading of the instrument as a whole persuasively suggests that it represented a "package deal," and we have no way of knowing on the record before us whether a proper allocation of the total consideration running to the assignor in respect of the tangible property includes something more than the $250,000 cash payment.

Obviously, the parties could easily have varied the amount of the immediate cash payment with appropriate accompanying changes in the consideration relating to the so-called reserved payment. Or, they might even have eliminated the immediate cash payment entirely while at the same time providing for increased consideration in respect of the other covenants. Could it fairly be said in such circumstances that the tangible property was being sold for nothing? The answer is plainly no. The transaction was a matter of negotiation between the parties, and it was entirely up to them as to whether there would be any immediate cash payment or the amount thereof. And if there was a cash payment, as in the present case, there must be some satisfying proof that it represented the sole consideration for the tangible assets before the assignor can succeed in its claim that it suffered a deductible loss, measured by the excess of the adjusted basis over the cash payment. Otherwise, merely by juggling the cash payment and the so-called retained interest, it would be able to obtain a deduction on account of a loss that it in fact did not sustain. We do not believe that such result was ever intended by the Congress.

Our problem is to determine whether the consideration properly allocable to the tangible property was less than its adjusted basis. Petitioners merely assert, without proof, that the consideration consisted solely of the $250,000 cash payment. The burden of proof, however, was upon them, and they have completely failed to carry it. There is no convincing evidence that the tangible assets were worth less than their adjusted basis at the time of sale, or that the seller negotiated a deal whereby the total consideration receivable in respect of such assets was less than their adjusted basis. One who claims a deduction on account of loss must establish his right to it.

The Government's position is supported by administrative practice of at least some 15 years' standing. G. C. M. 23623, 1943 C. B.

313. See also Rev. Rul. 55–35, 1955–1 C. B. 286. Petitioners' reliance upon *Choate* v. *Commissioner*, 324 U. S. 1, is misplaced. No issue was raised in that case as to whether a loss was actually sustained; that fact was assumed, and the Supreme Court explicitly noted that no question was "presented concerning the allocation of a portion of the purchase price to the equipment." 324 U. S. at p. 4. Cf. "Theoretical 'Loss' On Equipment Arising From Producing Leasehold Assignment," 4 Oil and Gas Tax Quarterly 1, 9–10. The very heart of the present case is whether a loss was in fact sustained, and on that question petitioners have failed to carry the burden of proof.

In Docket No. 57291 petitioner Kline does not contest his liability as transferee.

*Decisions will be entered for the respondent.*